IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC S. SMITH, **Plaintiff,** v. C/O BRINE, E. PIERCE, C/O STORY, C/O BENT, C/O RICHARDSON, JOHN DOE PHYSICIAN, WEXFORD HEALTHCARE SERVICES, and ILLINOIS DEPARTMENT OF CORRECTIONS, **Defendants.** | Case No. 25-cv-1957-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Eric S. Smith, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional Center. In the Complaint, Smith alleges that he was subjected to excessive force and denied specific medical care, all in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

On October 27, 2023, while housed in Menard's West Cellhouse, Smith and his cellmate got into an altercation (Doc. 1, p. 9). Smith alleges that he is designated as seriously mentally ill and had "an episode" which resulted in symptoms leading to the altercation (*Id.*). Smith does not further expound on the symptoms or how his episode led to a fight with his cellmate (*Id.* at pp. 9-10). Officers in the cellhouse responded to the altercation (*Id.* at p. 9).

Smith alleges that an emergency call for all officers was eventually called out and Smith was sprayed with OC spray (Doc. 1, p. 10). Officers then requested that Smith comply with being handcuffed and Smith complied with the officers' instructions (*Id.*). Despite being restrained and subdued, Smith alleges that officers sprayed Smith again with OC spray, striking him in the face and chest (*Id.* at p. 10-11). Smith collapsed to the ground due to difficulties breathing (*Id.* at p. 11). The officers then opened his cell door, jumped on top of Smith, and began beating him with closed fists (*Id.*). The officers struck Smith multiple times in the face, stomach, chest, arms, and legs (*Id.*). Smith maintains that he was barely conscious as the officers then dragged him down the gallery and stairs to the shower (*Id.* at p. 12).

Once at the showers, the major, lieutenant, sergeant, and correctional officers continued to assault Smith (Doc. 1, p. 12). Officer Richardson placed a plastic bag over Smith's head and tried to suffocate him (*Id.* at p. 13). Other officers, including Story and Bent, took turns hitting Smith in the head and body (*Id.*). Smith identifies Brine, Pierce, Story, Bent, and Richardson as the officers that participated in the assault (*Id.* at pp. 27-28). Smith alleges that he was naked and handcuffed during this second assault (*Id.* at p. 13). He was then taken on a stretcher to the medical wing where the officers continued their assault in the healthcare unit waiting area (*Id.* at pp. 13-14).

After the assault, Smith was treated in the healthcare unit for a small laceration above his eye (Doc. 1, p. 14). Smith maintains that he suffered other injuries including abrasions on his elbow and leg, as well as bruises, rib injuries, and bruised wrists from the restraints. His pinky finger was also disfigured (*Id.* at p. 15). He claims that none of these injuries were documented, and medical staff thought the injuries were due to the altercation with his cellmate (*Id.* at p. 14). Smith alleges that the medical staff did not realize that the officers used force and caused the injuries. As a result, Smith alleges medical staff overlooked most of his injuries and they were never recorded or treated (*Id.* at p. 15). After being treated by medical staff, he was placed in restrictive housing in a cell with no mattress or blankets (*Id.*). A spit hood was placed over his head. Smith alleges that the spit hood was filled with blood.

On October 30, 2023, Smith was again taken to the medical unit where most of his injuries were documented, including wounds over both eyebrows and the bridge of his nose (Doc. 1, p. 15). Smith asked the doctor (or nurse practitioner) to take pictures of his injuries, but the provider declined. The physician ordered a nurse to treat the wounds. The wounds to his wrists from the restraints were also documented and treated, as was an abrasion on his elbow (*Id.*). Smith alleges that the injury to his pinky finger was never recorded or treated (*Id.*). He believes that his finger should have been x-rayed and placed in a brace (*Id.* at p. 37). Smith alleges that, according to his medical file, he was supposed to receive follow-up treatment three times a week for 10 days, in order to prevent infection, but he never received any further treatment (*Id.* at p. 17). At some point his elbow became infected, but Smith fails to further describe any subsequent treatment for the infection. He only states that he now has a scar from the injury. Smith alleges that medical staff were unaware that the injuries were caused by staff. Smith alleges that he was referred to an optometrist who later documented

trauma to his right eye (*Id.* at pp. 17-18). Despite being diagnosed with eye trauma, Smith never received any additional care.

After the incident, Smith was issued a disciplinary ticket for assaulting an officer (Doc. 1, p. 18). The ticket alleged that Smith bit Officer Brine's finger during the incident (*Id.*). Smith was found guilty of the charge after a hearing. Smith maintains that even before the hearing, he was required to wear a bite mask outside of his cell. After the hearing, he received three months in restrictive housing and was forced to wear a bite mask any time he left his housing unit (*Id.*). Smith maintains that the charges for biting were invented to cover up the assault by the officers.

Smith sought to file grievances about the assault and asked his gallery officers for grievances on numerous occasions in October and November 2023 (Doc. 1, p. 19). He continued to request grievances from various officers through March 2024, but he never received a grievance form (*Id.*). Smith believes that the gallery officers refused to provide him with a grievance because he allegedly assaulted the officers (*Id.* at p. 20).

## **Preliminary Dismissals**

In addition to his claims against the officers, Smith alleges that IDOC created a bite mask policy requiring inmates who were accused of biting an officer to wear a bite mask even before being found guilty of the charges (Doc. 1, p. 31). Smith alleges that the officers issued a false disciplinary ticket, stating that Smith bit Officer Brine, to cover up for their own actions. As a result, Smith was required to wear a bite mask whenever he left the housing unit. He alleges the bite mask policy is unconstitutional because it dehumanizes and degrades him and constitutes cruel and unusual punishment. But Smith only identifies the Illinois Department of Corrections as defendant in regard to this claim, and IDOC is not a

proper defendant because it is not a "person" amendable to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983"). Any claim against IDOC is **DISMISSED with prejudice**. Smith fails to identify any official who implemented the alleged policy regarding the use of bite masks on inmates. Thus, any claim regarding the alleged mask policy is **DISMISSED without prejudice**.

Smith also alleges that Wexford Healthcare Services is liable for the actions of its practitioners because it employs the medical staff under a contract. He alleges that Wexford is responsible for the medical provider's failure to schedule a follow-up appointment after his initial treatment by the medical professional. Wexford can only be liable if it had a policy or practice that caused the constitutional deprivation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Smith fails to point to any policy or practice that allegedly delayed follow-up care. Smith alleges that Wexford had a policy of not allowing medical staff to take pictures of inmate's wounds (Doc. 1, p. 41). He also alleges that the company lacked a policy requiring a routine x-ray after a use of force event (*Id.* at p. 42). But he alleges the existence of these policies only in conclusory fashion, and he fails to allege that the doctor's decision not to take photographs or order an x-ray were related to any policy of Wexford's. Thus, his claim against Wexford is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** Eighth Amendment excessive force claim against C/O Brine, E. Pierce, C/O Story, C/O Bent, and C/O Richardson for allegedly assaulting Smith on October 27, 2023.
>
> **Count 2:** Eighth Amendment deliberate indifference to medical needs claim against John Doe Doctor/Nurse Practitioner for failing to properly diagnose and take pictures of Smith's injuries on October 30, 2023.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

At this stage, Smith states a viable excessive force claim against the officers for their actions on October 29, 2023. He alleges that C/O Brine, E. Pierce, C/O Story, C/O Bent, and C/O Richardson were all present and participated in the alleged use of force during and after Smith's removal from his cell. Thus, Count 1 shall proceed.

As to Smith's claim against the unknown doctor/nurse practitioner, Smith fails to state a claim. He alleges that the medical provider committed "medical negligence or inadequate medical treatment" because the provider failed to schedule a follow-up after Smith's initial treatment and failed to identify and treat his right pinky finger (Doc. 1, p. 36). Smith also takes issue with the provider's failure to order an x-ray and his decision not to take photographs of his injuries. But in order to state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately…

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

6

indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendant's actions were more than negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Smith states that the provider did not check for all of his injuries but acknowledges that the provider examined him and ordered the nurse to clean and treat his injuries. Although Smith asked for pictures to be taken of his injuries and wanted an x-ray, the Eighth Amendment does not entitle Smith to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Smith further alleges that he should have received a follow-up appointment and that his elbow became infected, but he fails to provide any additional facts about this additional treatment or the condition of his elbow. Smith acknowledges that the provider ordered a follow-up appointment as it was in his medical file, and nothing in the pleading alleges that the provider was aware that the follow-up care ordered did not occur. Thus, Count 2 against the unknown provider is **DISMISSED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against C/O Brine, E. Pierce, C/O Story, C/O Bent, and C/O Richardson. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for C/O Brine, E. Pierce, C/O Story, C/O Bent, and C/O Richardson: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Smith. If a defendant fails to sign and return the Waiver

of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Smith, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Smith's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Smith, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Smith is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order

will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 12, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**